The opinion of the Court was drawn up by
Davis, J.
This case has been presented to the Court before, (48 Maine, 495,) upon a report of the evidence differing in many respects from that now reported. It was then ordered to be tried by a jury; and, upon that trial, new questions of law were raised. The verdict being for the defendant, the plaintiff now presents the case again, upon exceptions and a motion for a new trial.
The plaintiff owned a mill and privilege on the Meduxnekeag stream, in Houlton; and he occupied a passage way and platform adjacent thereto. ■ He derived his title to the premises, through mesne conveyances, from J. S. and A. E. Putnam, by their deed to Eufus*Mansur, dated April 29, 1844.
In the summer of 1857, the defendant entered upon a portion of the passage way, and erected a shop thereon, in .part; and he placed a shaft across the passage way, to connect the machinery in the shop with the water wheel of a grist mill. For that entry this action of trespass quare clausum was brought by the plaintiff.
The defendant entered under a lease from the owners of .the gristmill, who also derived their title, through mesne (aonveyances, from the Putnams, by their deed to Batchelor JSissey, dated May 13, 1843. The description of the preinikss conveyed by this deed is as follows :—
'"’The gristmill in said Houlton, on the Meduxnekeag :Stream, now. owned and occupied by us, together with the Rand ¡and privileges where the same is situated, necessary for and attached to said gristmill; hereby meáñing and intending to convey all the lands and mill privilege, (not here *331 tofore sold by us,) on the dam connected with said gristmill and privilege.”
This was a mortgage deed; and the debt secured by it not being paid, it was afterwards foreclosed. The validity of the foreclosure is not questioned.
The defendant contends that the deed to Hussey embraced ” all the lands and privilege” owned at the time by the Putnams " on the dam connected with the gristmill.”
The plaintiff contends that nothing passed by the deed except what was " necessary for and attached to said gristmill.”
An explanatory clause, added to the clause containing the grant, sometimes has the effect to diminish, and sometimes to enlarge the grant; and sometimes it is rejected as repugnant to the grant. Forbish v. Lombard, 13 Met., 109; Chesley v. Holmes, 40 Maine, 536; Pike v. Munroe, 36 Maine, 309. The authorities on this subject are collected in the case oí Melvin v. Proprietor's of Locks, &c., 5 Met., 15 ; and the following general rules are deduced:—
" If there be two descriptions of the land conveyed, which do not coincide, the grantee is entitled to hold that which will be most beneficial to him.”
" If some of the particulars of the description of the estate conveyed do not agree, those which are uncertain and liable to errors and mistakes, must be governed by those which are more certain.”
If the deed of the Putnams to Hussey, by the explanatory clause, commencing with the words •" hereby meaning and intending to convey,” embraces all the lands and privilege on the dam, not previously sold by them, such a construction is not only more beneficial to the grantee, but more definite and certain than a grant of what was necessary for and attached to the mill. The former is susceptible of actual demonstration and proof, by fixed boundaries. The latter can be determined only by the varying opinions and imperfect judgment of men.
But does the explanatory clause in that deed embrace all *332 the lands not previously sold by the grantors ? This raises a question of verbal construction, of no little difficulty. Eor the clause may be analyzed, and the words supplied which are not expressed, in two ways, without doing any violence to the language.
Thus, — "hereby meaning and intending to convey all lands and mill privilege (not heretofore sold by us) on the dam (which is) connected with said gristmill and privilege.”
Or, — " hereby meaning and intending to convey all the lands and mill privilege, (not heretofore sold by us) on the dam, (which are) connected with said gristmill and piivilege.”
So far as appears in the evidence reported, the parties themselves, by their subsequent acts and occupation, seem to have adopted the latter construction, treating the grant as embracing, — not all the lands and privilege on the dam, not previously sold, — but all the lands and privilege connected with the gristmill. This construction is most favorable to the plaintiff, and is in harmony with the instructions given to the jury. He therefore has no reason to complain; and it is unnecessary for us to express any opinion in regard to its correctness.
The plaintiff contended, at the trial, that if the passage way was not embraced in the deed from the Putnams, he had occupied it for a long time with their consent; that he was therefore a tenant at will; and that until the tenancy should be terminated by a notice to quit, according to the statute, the defendant, or his lessors, had no right of entry. But the jury were instructed " that, if the plaintiff was the tenant at will of the Putnams, that tenancy was terminated by the sale to Hussey; that the alienation of the estate changed the tenancy at will to a tenancy at sufferance.”
The plaintiff appears to have occupied with the consent of the subsequent owners, as much as of the Putnams, until the defendant took his lease for a term of years, in 1857. But the principle would apply to the last, alienation, as well as to the first. It is not claimed that the defendant ever gave such consent.
*333 The statute in force at the time provided that "tenancies at will might he terminated by notice in writing served upon the occupant thirty days before the time fixed in said notice for the termination thereof.” Law of 1853, c. 39, § 1.
This statute, and the one which preceded it, requiring a longer notice, enabled a landlord to terminate such a tenancy, without entry therefor, or alienation. It does not provide that such tenancies cannot be terminated in any other way. And even if this is implied in tenancies at will under the statute, such tenancies at common law may be terminated in the same manner as before.
"If the landlord enters on the land and cuts down the trees demised, or makes a feoffment, or a lease for years to commence immediately, the estate at will is thereby determined.” 1 Cruise, title 9, c. 1, § 18. "It is an intrinsic quality of an estate at will,” says Shaw, C. J., "that it is personal, and cannot pass to an assignee; and that, by an alienation in fee or for years, the estate at will is ipso facto determined, and cannot subsist longer. This is a limitation of the estate which is incident to its very nature. When, therefore, it is determined by operation of law, it is determined by its own limitation, without notice.” Howard v. Merriam, 5 Cush., 563. And in Curtis v. Galvin, 1 Allen, 215, the same doctrine is stated by Bigelow, C. J. " The determination of an estate at will, by an alienation by the owner of the reversion, is one of the legal incidents of such an estate, to which the right of the lessee therein is subject, and by which it may be as effectually terminated, as by a notice to quit, given according to the requisitions of the statute.” McFarland v. Chase, 7 Gray, 462.
This might seem, at first view, to be in conflict with the case of Young v. Young, 36 Maine, 133. But that decision, if correct, does not apply to the case at bar. The tenant in that case was in possession under a parol lease, at an agreed rent. Except by special provision of statute, it would have been a valid lease from year to year. It was a tenancy at will by statute. And it is expressly declared in *334 the opinion of the Court, that tenancies at will by the common law might be determined without notice to quit.
If the plaintiff was a tenant at will, it was by the common law. He occupied merely by the consent of the. owner, without paying or agreeing to pay any rent. -By the conveyance of the premises to the defendant he became a tenant at sufferance. Benedict v. Morse, 10 Met., 223. Such a tenant cannot maintain trespass quare clausum for a peaceable entry. Motion and exceptions overruled.
Appleton,.C. J., Rice, Cutting and Kent, <TJ., concurred.