(Hamilton County Common Pleas Court.)

SARAH L. DYE v. NORMAN M. DIMICK AND S. D. FITTON, EX'RS. OF ELIZABETH CHALFANT.

Where farm lands are leased for a term made up of calendar years, with the rent payable at fixed periods therein, in the absence of other testimony, the mere fact that the land is to be farmed will not convert the rent into emblements in contemplation of Rev. Stat., 6026.

As between the executor of the owner of the fee and her devisee, the devisee, is entitled to all rents becoming due after the death of the testatrix.

---

JELKE, J.

Elizabeth Chalfant owned a certain farm of about one hundred and eighty acres, with improvements thereon, near Springdale, in this county.

On October 24, 1894, by extension and modification of a lease existing prior thereto, Mrs. Chalfant leased to Norman Dimick said farm for the period of three years from March 1, 1895, upon the same terms, conditions and provisions as in said lease, "except that the rent shall be $900 per year. payable in two payments of $450 each, on November 1, 1895, and March 1, 1896, and so on."

The installment of rent due November 1, 1896, was paid.

Mrs. Chalfant died on November 10, 1896, leaving a will, item fourth of which reads: "And also I give and devise to my sister Sarah L. Dye, the use and control, rents and profits of my farm adjoining the village of Springdale, in Hamilton county. Ohio, containing about one hundred and eighty acres, for and during her natural life, she, however, paying taxes and keeping up ordinary repairs and insurance thereon."

Dimick is ready to pay the installment due under said lease March 1st, 1897, but is uncertain to whom to pay it, it being claimed by Sarah L. Dye under the devise in said will on the one hand, and by S. D. Fitton, executor of Elizabeth Chalfant, on the other.

Who is entitled to receive the March 1st, 1897, installment? This is the question counsel agree is presented on the pleadings and the question submitted to the court.

The executor claims in his cross-petition that Dimick farmed said premises in the year 1896, in wheat, corn and other products; that the crops were all gathered, or at least matured before Elizabeth Chalfant's death, and that no crops were or could be raised on said farm for the balance of said year ending March 1st, 1897, and that thereby the installment due March 1st, 1897, became assets of the estate and passed to said Fitton as executor, and did not pass under said fourth item to Sarah L. Dye.

Plaintiff cites Woerner's Law of Administation, Vol. 1, Sec. 300 et seq.; Sohier v. Eldridge, 103 Mass., 345; Ball v. Bank, 80 Ky., 501; Bloodworth v. Stevens, Admx., 51 Miss., 475; King v. Anderson, 20 Ind., 385; Taylor's Landlord and Tenant, Secs. 390 and 534; Giauque's Settlement of Estates, p. 285, Sec. 26; Overturf, Admr., v. Dugan, 29 Ohio St., 234.

Counsel for executor cites Rev. Stat. 6026 and 6027; Woerner's Law of Administration, p. 637; Washburn on Real Prop., *pp. 98, 102; Hayes, executor, v. West, 3 C. C., p. 64.

The law as to rents in Ohio is laid down by Gilmore, J., in Overturf, Admr. v. Dugan, 29 Ohio St., 23. "The title to the real estate, which the heir takes by descent, entitles him to the possession of his ancestor; and this draws to it the right to receive, as against the administrator, the rents and profits of the land (emblements excepted) during the continuance of his possession, which may be from the death of the ancestor until the actual sale of the land by the administrator for the payment of the debts of his intestate."

Counsel for the executor admit that this rule would be applicable to the case at bar if the March 1st, 1897, $450 installment were cash rent pure and simple; but it is contended that on account of the nature of the land and the terms of the lease, this March 1st installment was not rent, but became and was emblements, which are excepted from the rule as laid down by Judge Gilmore, and are provided for in Rev. Stat., 6026: "The emblements on annual crops raised by labor, and whether severed or not from the land of the deceased at the time of his death, shall be assets in the hands of the executor or administrator and shall be included in the inventory." And Rev. Stat. 6027: "The executor or administrator or the person to whom he may sell such emblements may, at all reasonable times, enter upon the lands to cultivate, sever and gather the same."

I can see no ground for this contention of counsel.

The lease provides for a money rental at fixed periods of the calendar year, irrespective of what use, if any, lessee may make of the land.

The syllabus of Hayes, executor, v. West 3. C. C., 64, would seem to support the position of executor's counsel, but a careful reading of the opinion of Judge Cox in the case does not.

In that case Mrs. Hayes was a life tenant merely, and not the owner of the fee simple, as was Mrs. Chalfant in the case at bar. It was admitted that if Mrs. Hayes had planted and cultivated the crop she or her executor would have been entitled to gather it without any liability to West or any owner of the reversion.

In the case at bar, had Mrs. Chalfant herself planted and cultivated the farm, in regard to the crop this would probably, though considering the devise not necessarily, be so as between Mrs. Chalfant's executor and the devisee, Mrs. Dye. At all events for the purpose of this argument counsel would be safe in admitting it.

"But," said Judge Cox in that case, "it is contended that inasmuch as the land was rented for money rent, although for the express purpose of raising a crop of corn, the rent should be divided proportionately between the executor of the tenant for life and the reversioner." While Judge Cox did not decide this contention in that case, both he and counsel seemed to recognize the fact, that the rental term was the corn crop period, as a strong element in tending to convert the rental paid into emblements.

In the case at bar the term is made up of calendar years, with the rent payable at fixed periods therein.

But in the Hayes case the learned court did not decide that contention in favor of the executor, but found that its decision was not necessary to the determination of that case, and refrained from deciding it. The court did not award the money paid by Moses Hayes to the executor on the ground of its being emblements, but said that in the absence of a statute in Ohio like the English statute of George II. and William IV. apportioning the rents, in as much as the executor had the rent, Moses Hayes having voluntarily paid it to him, he could not be compelled to surrender it at the suit of West, the reversioner; that Moses Hayes was under liability to neither the executor of the life-tenant nor the reversioner, and that as between such executor of the life-tenant and reversioner "potior est conditio possidentis."

I conclude that the Hayes case is not an authority for the position taken by the executor's counsel.

I find nothing in the facts of the case now under consideration or in the law to justify me in treating the rent payable by Dimick as emblements.

I decide that such rent follows the estate into the hands of the devisee, Mrs. Dye, and is payable to her; and having reached this conclusion, I am confirmed in it by reverting to item four of the will, as I believe that such was the plain intention of testratrix as therein expressed.

Judgment for plaintiff.

Mr. Buntin for plaintiff.

Mr. Millikin for executor, with whom was Mr. Belden, for residuary legatee.